| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Edward L. Rideout, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-09-1813 |
| | § | |
| E. R. Norwood, et al., | § | |
| | § | |
| Defendants. | § | |

## Opinion on Judgment

1. *Background.*

Edward L. Rideout heard a story that his family might have once owned a tract of land in northeast Liberty County, Texas. According to this tale, his grandfather, a buffalo soldier, was deeded 2,200 acres of federal public lands by the United States in 1876. Rideout says that the Klan ran his father, mother, siblings, and him off that property in 1939, when Rideout was two years old. His family moved to Daisetta and then to Beaumont. Rideout did not try to find the land for 55 years – until 1994.

2. *Other Suits.*

Having had a cousin drive him around county roads to look for the property, Rideout spotted some oil wells. They were on part of the 4,000-acre survey that included the lost land, according to lore. He decided that those wells must be sitting on his land and has claimed them against anyone he thought was connected to it in four suits.

    A. *Buffum Case.*

In 2005, Rideout sued Buffum Oil & Gas, Inc., and SR Production Company in federal court. See *Edward Rideout v. Buffum Oil & Gas and SR Production Corp.*, H-05-0521. He chose those defendants because the location sign on the fence around the oil wells had their names on it as the operator and lessor. He sued them for fifty billion

dollars. Noting that this was a land dispute between citizens of Texas, the court dismissed his case without prejudice.

### B. *Testimony.*

In August of 2007, Rideout petitioned to depose E. R. Norwood, a principal of SR Production. See, County Civil Court at Law Three in Harris County, *Edward L. Rideout v. Does 1-50*, 902381. Rideout had a lawyer when the suit was filed. His petition was dismissed for want of prosecution on June 3, 2009.

### C. *Title.*

While Rideout's petition was pending, E. R. Norwood and SR Production brought a trespass to try title action in the 253rd District Court, Liberty County, in January of 2008. Rideout answered this suit with the assistance of counsel. In August of 2009, the final judgment quieted title in Norwood and SR Production. All interests claimed by Rideout from Norwood were found invalid.

### 3. *This Case.*

Just before the title judgment, Rideout tried again, filing this action in June of 2009. This time, he added a civil rights claim to his title dispute. He sued E. R. Norwood, SR Production Corporation, Chevron, ExxonMobil Corporation, Shell Oil Company, and Buffum and Benning Oil Corporation.

### 4. *Civil Rights.*

Assuming that Rideout's parents were driven from some land in Liberty County in 1939 and assuming that the night-riders were supported by the government, that does not establish (a) what land is claimed precisely, (b) they owned it, or (c) if they owned the surface, that they owned the minerals.

If Rideout's parents were deprived of their liberty in 1939, Rideout has no standing to sue for their injuries. If he had standing for them, the time for suing would have expired in 1943 at the latest.

As a small child who only knows of the incident from stories told in Beaumont, he has no injury. If he had been injured, his time to sue would have lapsed four years after he reached his maturity – 1962.

Assuming his family was driven from some land, none of the people whom he has named as defendants were participants in that incident. If they had been and if limitations had not run, Rideout cannot derive his damages from the loss of land that he can neither locate nor show title in his parents.

5.  *Title.*

A Texan, Rideout, is claiming title to land in Texas from other Texans. This court should not, without some extraordinary aspect to a case like this, entertain it because of the accessibility of Texas's courts and her interest in the subject. On the other hand, the defendants have a right to have their affliction by fictitious federal lawsuits ended. Abstention here affronts rather than impairs a respectful relationship with our sister courts of the state.

Rideout has no instrument of title conveying any land in Liberty County, Texas, to his grandparents, parents, or him. He has produced two documents as his parental warranty deeds. Neither is a warranty deed, and neither conveys title to his parents. The first conveys without warranty a one-half interest in unspecified, nearby land from Columbus Rideout and Ivory Rideout to five lawyers. The second is a disclaimer of title and stipulation of tenancy in another part of Liberty County. Both of them relinquish claims putatively held by his family.

Assuming that one of Rideout's documents gave his parents some kind of interest, it is impossible to ascertain the land's boundaries. Rideout has not accounted for the owners of the one-half interest owned by the lawyers, and in a title claim, they are necessary parties.

Assuming that his ancestors had title, he has no explanation of how he acquired it. The land, if it or a claim to it had subsisted, would have passed by his parents' wills or intestacy. Rideout has not ascertained and joined his relatives who would have an interest in the land, preventing his winning if all of the other impediments were to disappear.

Last, Rideout's grandfather could not have received his title the way that the family myth says. When the Republic of Texas adhered to the Union, she kept her public lands.

Texas did cede parts of her territory in exchange for her assuming the Republic's debt. That land is now part of New Mexico and Colorado, not southeast Texas. Land grants in Texas, therefore, have been by the State of Texas rather than the United States.

6. *Oil Companies.*

ExxonMobil Corporation does not have an interest in the land. Exxon was in the chain of title at some point, but not now. Exxon said that Shell may have taken a lease in the 1940s that has long ago reverted to its grantor.

Shell Oil Company, Chevron, and Buffom and Benning Oil Company are not part of this case. They were named but have not been served for seven months. For three of those seven months, Rideout had retained a lawyer who could have easily researched how to serve these well-known companies. No extension for additional time to serve them was requested, and none would have been granted because of the ease of the task.

7. *Counsel.*

More disturbing than Rideout's persistence is his counsel's assistance. After one lawyer spurned a retainer of $5,000 and another refused the case, Rideout found Waverly Nolley. Nolley transformed Rideout's petition into a formal complaint. Nolley did not check the land or court records of Liberty or Harris Counties; he neither called nor wrote Norwood to ask about the claims. Most of all, he never gave a thought to the elements of his legal theories or their periods of limitations.

What he did was to plead that the defendants violated Rideout's civil rights and stole his land. He pleaded deeds without asking to see one. He pleaded that Rideout's injury from his parents' loss of land and civil rights by these people was $60,450,000.

Nolley accepted responsibility for a case filed by Rideout himself. In taking it, Nolley did not require explanations or documents. Years earlier, Rideout had hired someone to perform a title search. The search revealed no records in his family's name. Rideout had the results of this search in his possession. Had Nolley inquired of his client if a search had been done and Rideout answered truthfully, Nolley would have known that Rideout's claim had no factual basis.

After taking the case, Nolley did not contact the defendants. He did not supply initial disclosures. He did let the case fester for four months. He failed to join the meeting

among counsel before the conference with the court. The court alerted Nolley to the earlier federal action the day before the initial conference, and at the conference, he conceded that he had not bothered to check it.

Once before the court, the defendants educated Nolley of his client's defective documents, depositions, and cases. They explained easily-ascertainable public records. The court inquired about limitations, an existing judgment, who was the governmental actor, and other elementary points.

Nolley finally said that, had he known all of this, he would not have taken the case. But even without his education at the expense of the defendants and the public, he knew enough on having read Rideout's complaint – that his client was suing on a 70-year-old event founded on hearsay, with no documents, public records, description of the land, or identities of the potential claimants to the land in his family and those adverse to it – to know that the case failed as a matter of law for many reasons.

In our open legal system, individuals can initiate lawsuits without the assistance of counsel. Not infrequently, these suits are based on hopes and wishes rather than sound legal theory supported by the facts. The time and resources devoted to them are a small and justifiable cost of that important niche of freedom, including the opportunity for these cases to be later accepted by counsel. None of the tolerance for informality and other defects that attends filings by laymen applies to the pleadings of lawyers. When a lawyer is approached on the brink of limitations, he may be allowed a modest time to check his facts and law. Here, however, Nolley took a man's third case that was four months old on an event that was 70 years old. He then simply did nothing for four months.

Nolley exacerbated the case. He used his law license irresponsibly to inflict additional costs on the defendants. His lazy hope of an easy gain hurt the defendants and the public.

At this point, Rideout himself can no longer be allowed to impose his misguided imaginings on others with impunity. He too will be obliged to compensate the defendants for their costs.

Rideout and Nolley are jointly and severally liable for the defendants' legal fees. Norwood, as counsel for himself and SR Production, prepared for the case for seven hours. Exxon's counsel worked eight hours. Compensating them at a low-reasonable rate of $375 per hour, Rideout and Nolley will reimburse Norwood and SR Production $2,625 and Exxon $3,000.

8.  *Conclusion.*

Edward L. Rideout will take nothing from E.R. Norwood, SR Production Corporation, and ExxonMobil Corporation. The judgment in this action will preclude an action that was or could have been brought arising from the transactions about this land and Rideout between 1939 and the judgment. Because they were not served, Shell Oil Company, Chevron, and Buffum and Benning Oil Corporation are not defendants in this suit. Edward L. Rideout and Waverly Nolley will be jointly and severally liable for the fees of E. R. Norwood, SR Production Company, and ExxonMobil Corporation.

Signed on February 25, 2010, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge